UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
PIA HOFFMAN,

        Plaintiff,

        v.

SCHIAVONE CONTRACTING CORP.,
SCHIAVONE CONSTRUCTION CO. LLC,
JOHN HASSLER, and INTERNATIONAL
UNION OF OPERATING ENGINEERS
LOCAL 14-14B,

        Defendants.
-------------------------------------------------X

11 CV 2346 (SJ)

<u>MEMORANDUM
AND ORDER</u>

A P P E A R A N C E S

LAW OFFICES OF MICHAEL G. O'NEILL
30 Vesey Street
New York, NY 10007
By:    Michael G. O'Neill
        Anthony P Consiglio
        Theresa Bui Wade
Attorneys for Plaintiff

BRADY MCGUIRE & STEINBERG, LLP
603 Warburton Avenue
P.O. Box 176
Hastings-on-Hudson, NY 10706
By:    James Michael Steinberg
Attorneys for Defendant International Union of Operating Engineers Local 14-14B

JACKSON LEWIS, LLP
58 South Service Road, Suite 410

Melville, NY 11747
By: Marc Wenger
    Kimberly Natalie Dobson
Attorneys for Defendants Schiavone Contracting Corp., Schiavone Construction Co. LLC

LAW OFFICE OF JOSEPH GREEN, PLLC
160 Broadway, Suite 500
New York, NY 10038
By: Joseph H. Green
Attorney for Defendant John Hassler

LORETTA E. LYNCH, ESQ.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
By: Richard K. Hayes
Assistant United States Attorney

**JOHNSON, Senior District Judge:**

Plaintiff Pia Hoffman ("Plaintiff" or "Hoffman"), a union member, filed this "hybrid" action, pursuant to Section 301(a) of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185(a), alleging unfair labor practices, including violations of the union's duty of fair representation, implied under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a), and violations of the collective bargaining agreement by her former employer. Plaintiff also raises gender discrimination claims under New York City and New York State human rights law, pursuant to New York City Administrative Code §§ 8-101-131 and New York Executive Law § 290 et seq., respectively. Defendants, which includes Plaintiff's former employer ("employer Defendant"), Plaintiff's union ("union Defendant"),

and a co-worker with supervisory authority ("Defendant Hassler") (collectively, "Defendants"), bring this motion for summary judgment. Based on the submissions of the parties, Defendants' motion for summary judgment is granted.

## BACKGROUND

Plaintiff is a member the International Union of Operating Engineers Local 14-14B, a labor union.[1] She began working at a jobsite that was developing the Second Avenue subway line in March of 2009 ("Second Avenue subway jobsite"). Her employer was a joint venture of Schiavone Contracting Corporation, Schiavone Construction Company, LLC, and Skanska USA Civil Northeast, Inc., and J.F. Shea Construction, Inc. referred to as S3 Tunnel Constructors. During this period, she worked the day shift at the Second Avenue subway jobsite, operating a Liebherr 855 crane and excavating the area. On or about March 15, 2010, the employer began operating a swing shift[2] on the same machine Plaintiff had operated during the day for the past year. John Hassler, Jr., son of defendant John Hassler, was the crane operator for the swing shift. One week later, on March 23, 2010, the day shift was eliminated entirely, the crane was operating exclusively during the swing shift, and Plaintiff was laid off.

---

[1] Unless otherwise indicated, all facts come from the parties' Rule 56.1 Statement of Undisputed Facts or the July 18, 2013 Declaration of Pia Hoffman
[2] The "swing shift" is typically a work schedule situated between day and night shifts, often from 3:00 p.m. to 11:00 p.m.

Plaintiff filed a job claim form with the union on March 25, 2010, registering her belief that the position from which she had been laid off was rightfully hers. (See Decl. of James M. Steiberg at Exh. H.) On March 29, 2010, she contacted Local 14's Ethical Practices Attorney ("EPA"), a federal monitor in place pursuant to a consent decree to address corruption and other misconduct, after filing her claim on the job with the union's Business Representative. Plaintiff claimed both that she was unfairly laid off, as she should have been offered the swing shift position, and that she was unfairly denied the opportunity to claim her prior position on a different crane at the same jobsite. On February 28, 2011, the EPA issued a letter stating his written opinion that Plaintiff's layoff was not in violation of the union's bylaws. (See Decl. of James M. Steiberg at Exh. H.)

About one year prior to her layoff, in April, 2009, Plaintiff describes being taken to dinner by Defendant Hassler. She claims he discussed his relationship with his wife at that dinner and believed he made subtle sexual advances toward her, which she ignored or rejected. (Hoffman Tr. at 297-300.) Plaintiff states she noticed a marked change in his behavior toward her after this; he was less conciliatory, more rude and abrupt. (Id.) Defendant Hassler admits to the dinner but denies any sexual conduct toward Plaintiff.

Plaintiff also describes typical practices within the union, either codified in the bylaws or existing as "unwritten rules," some of which may be best understood through their exceptions codified in the bylaws (like "machine seniority"). Plaintiff

describes scenarios where machine operators may "walk away" from a job and directly "give" the position to another qualified operator without the interference or endorsement of a supervisor. (Hoffman Tr. at 52-53.) Plaintiff refers to unwritten rules, including that a crane operator has a claim on her machine as long as it is in operation on a site, i.e., "machine seniority," and that the first operator hired will be the last to leave, i.e., "job seniority."

Pursuant to this policy, Plaintiff states that, as the first crane operator at the job site, she had an additional claim on a different crane at the Second Avenue subway jobsite, being operated by someone else at the time of her layoff, because she relocated to a different machine to accommodate a site supervisor's preference. To maintain her claim on the original crane, Plaintiff had spoken with the crane operator replacing her and established his willingness to walk off the job site to protect her claim on that machine. (Hoffman Tr. at 48-51.) However, although he was willing to take the layoff, he was discouraged from doing so and ultimately chose not to walk off the job. He couldn't recall the substance of any conversations he had with regard to the matter with union personnel. (Manchester Tr. at 30-33.)

Plaintiff was referred back to the Second Avenue subway jobsite for work on at least three more occasions, the first of which was only a few weeks after her March, 2010 layoff. However, she never again worked at that jobsite for an uninterrupted period of one year, as she had prior to the layoff at issue in the instant case.

# DISCUSSION

**1. Summary Judgment Standard**

It is well-settled that a party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). Material facts are those that may affect the outcome of the case. See Anderson, 477 U.S. at 248. An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the non-moving party. Id.

In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248). If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied. See Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at 256. Indeed, "the mere existence of

some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48. Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. Id. at 248; see also Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

2. **Hybrid Claims Under Labor Management Relations Act**

Plaintiff asserts a "hybrid" claim pursuant to the Labor Management Relations Act § 301, 29 U.S.C. § 185, alleging that her employer violated the collective bargaining agreement, and that the union's failure to enforce the collective bargaining agreement and protect her rights is a breach of its duty of fair representation, in violation of the National Labor Relations Act § 9(a), 29 U.S.C. § 159(a). See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983); White v. White Rose Food, 237 F.3d 174, 178–79 & n. 3 (2d Cir.2001). In a hybrid claim alleging claims against employer and union, "the two claims are inextricably interdependent." DelCostello, 462 U.S. at 164 (citations omitted). In this particular case, the core of Plaintiff's claims against the union and against her employer involves allegations of conduct that was discriminatory in nature and based on the fact she is a woman. Thus, in order to evaluate Plaintiff's hybrid claim, it is important to first examine her claims of gender discrimination.

### 3. Plaintiff's Claims of Gender Discrimination

The gravamen of Plaintiff's Section 301 claim is that she was laid off as a result of gender discrimination in the workplace and that her union failed to protect – and in fact further impeded – her rights in this regard. Although Plaintiff has asserted no federal discrimination claims, she brings her claims pursuant to New York City and New York State anti-discrimination laws. With respect to New York State law, this Circuit has held that identical standards apply to state law discrimination and harassment claims and to claims brought under Title VII. See, e.g., Hyek v. Field Support Servs., Inc., 461 Fed. Appx. 59, 60 (2d Cir. 2012) (NYSHRL claims analytically identical to Title VII claims); Torres v. Pisano, 116 F.3d 625, 629 n. 1 (2d Cir. 1997) (same); Sethi v. Narod, 2014 WL 1343069 at n. 3 (E.D.N.Y. April 02, 2014). Plaintiff's city law claims benefit from a more liberal standard. See Mihalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102, 109 (2d Cir. 2013)(confirming federal civil rights standards set a floor, not a ceiling, for analysis of claims under the New York City Human Rights Law and mandating construction "broadly in favor of discrimination plaintiffs"); See also, Kellman v. Metropolitan Transp. Authority, 2014 WL 1243698 (S.D.N.Y. Mar. 26, 2014)(citing Bennett v. Health Mgmt. Sys., Inc., 92 A.D.3d 29, 34 (N.Y.App.Div.2011)) (analysis must fulfill city law's "uniquely broad and remedial purposes, which go beyond those of counterpart state or federal civil rights laws").

On a claim of gender discrimination, the plaintiff has the initial burden to prove by a preponderance of the evidence a prima facie case of discrimination. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252–253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the plaintiff makes out a prima facie case, the burden shifts to the employer to rebut the presumption of discrimination. Using admissible evidence, defendants may offer "legitimate, independent, and nondiscriminatory reasons to support its employment decision" Matter of Miller Brewing Co. v. State Div. of Human Rights, 66 N.Y.2d at 938; see also, Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 253. Even where the defendants put forth a nondiscriminatory reason to support the adverse employment action, a plaintiff remains entitled to prove the "legitimate" reasons proffered by defendants were merely a pretext for discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. at 805. The plaintiff must demonstrate by competent evidence that the presumptively valid reasons for her termination masked a discriminatory decision. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

In this case, Plaintiff claims that she was laid off from the Second Avenue subway job site because she was a woman and after her supervisor, Defendant Hassler, the master mechanic at the jobsite who had hiring and firing authority, made sexual advances toward her. The employer added a swing shift and Defendant Hassler's son began working on her crane at night until the day shift was eliminated entirely one week later. Plaintiff claims Defendant Hassler's son never received the

union overtime rate required for swing shift work but instead received his normal hourly rate, i.e., "straight time." Plaintiff states that the typical union practice would have allowed her to assume the swing shift operation of her machine, as she was first on the site and first on the machine, or that she could displace another worker for whom she had left her machine previously. Neither of these options were afforded to Plaintiff. Nevertheless, in her field, crane operators come on and off a job as needed; Plaintiff's layoff in this instance (although costing her a long-term and secure position) did not prejudice her ability to obtain later employment positions operating cranes, including for the same employer.

Plaintiff's burden at the prima facie stage is de minimus and her allegations, supported by the surrounding events, do support a prima facie finding of discrimination. And certainly Plaintiff raises a set of concerning questions as to the conduct of the Defendants. However, in this case, Plaintiff has simply failed to adequately develop her discrimination claims through discovery. She alleges a series of events but has developed little or no evidence through discovery linking the events alleged in the complaint causally or otherwise to a colorable inference of discrimination.

Thus, Defendants' allegations that the layoff of the day shift had to do with evolving workflow, the digging of rock versus soil, or the prepositioning of certain materials in advance of the day shift appear to be legitimate, non-discriminatory bases for the elimination of the day shift. See, e.g., Davis v. State Univ. of N.Y., 802

F.2d 638, 641 (2d Cir. 1986) ("employer need not prove . . . it made the wisest choice, but only that the reasons for the decision were nondiscriminatory"); Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) ("[I]t is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal"). The Defendants' interpretation that the layoff of the day shift also involved the layoff of Plaintiff, rather than her transfer to the swing shift, resulting in Plaintiff's termination, has not been shown to be pretextual or motivated by discriminatory animus by Plaintiff. In the same vein, Plaintiff alleges she was prevented from re-asserting her claim on her initial crane on the Second Avenue subway jobsite, but there appears to be a nondiscriminatory explanation for this as well: the crane operator who had agreed to walk off the jobsite for her said he was discouraged from doing so by a family-member colleague and attributed his failure to walk off the jobsite to union policies relating to how he received the position. (See Manchester Tr. at 16-19.)

Absent material issues of fact and faced with little more than Plaintiff's unsubstantiated allegations, these claims cannot stand. Plaintiff references witnesses to misconduct alleged here, but they do not offer evidence wholly consistent with her claims. Whether or not Defendant Hassler discussed sexual matters with Plaintiff over dinner nearly a year before her layoff does not appear to be a material fact in this case warranting the intervention of a jury because Plaintiff has not demonstrated

Defendants' nondiscriminatory explanations are pretextual, even if she did reject or ignore his alleged sexual advances prior to her layoff.

Despite concluding discovery, and having reviewed the events, as well as the depositions, affidavits, declarations, and exhibits in this case, Plaintiff's gender discrimination claim appears speculative. Even under the more liberal standard applied to Plaintiff's city law claims, more evidence than just Plaintiff's testimony alone is required. While the Court recognizes that this may be a result of the culture of misogyny that Plaintiff implies, and recognizes that Plaintiff works in an arena that was historically a hotspot for discriminatory animus, a case cannot stand at the summary judgment stage without clearly substantiated allegations and reasoning.

4. **Hybrid Claims Under Labor Management Relations Act**

The Court now turns to analysis of Plaintiff's "hybrid" claim under the Labor Management Relations Act § 301. See 29 U.S.C. § 185. As noted supra, in a hybrid claim alleging claims against employer and union, "the two claims are inextricably interdependent." DelCostello, 462 U.S. at 164 (citations omitted). In this particular case, where claims of discrimination and unfair dealing involve allegations of interdependent actions and decisions by both union and employer, the value of the hybrid claim mechanism is particularly evident. In a hybrid claim, jurisdiction rests on Section 301(a) of the LMRA.

### a. Duty of Fair Representation

The federal duty of fair representation is implied by section 9(a) of the NLRA, which grants unions the exclusive right to bargain for all members of a designated unit. See Vaca v. Sipes, 386 U.S. 171, 177 (1967). A union breaches its duty of fair representation only if its actions are either "arbitrary, discriminatory, or in bad faith." O'Neill, 499 U.S. 65, 67 (1991); Vaca, 386 U.S. at 190. In order for Plaintiff to prove a claim against the union for breach of the duty of fair representation, she must show that (1) the union engaged in arbitrary, discriminatory, or bad faith conduct, and (2) the conduct caused plaintiff's injuries. White v. White Rose Food, 237 F.3d 174, 179 (2d Cir.2001). A finding of arbitrariness requires behavior so unreasonable as to be affirmatively irrational, while a finding of bad faith involves showing "fraudulent, deceitful, or dishonest action." Id. The union breaches its duty of fair representation where it "arbitrarily ignore[s] a meritorious grievance." Spellacy v. Airline Pilots Ass'n–Int'l, 156 F.3d 120, 128 (2d Cir.1998) (quotations omitted).

In the context of these cases, judicial review of the union's enforcement, or lack thereof, of the collective bargaining agreement "must be highly deferential." Gvozdenovic v. United Air Lines, Inc., 933 F.2d 1100, 1106 (2d Cir.1991) (quotations omitted). This Court's inquiry "is limited to whether the union took a position on the basis of an informed, reasoned judgment regarding the merits of the claim in light of the language in the collective bargaining agreement." Spellacy, 156

F.3d at 127.  The "wide range of reasonableness" within which unions may lawfully act, "gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." Musto v. Transport Workers Union of Am., 818 F.Supp.2d 621, 632 (E.D.N.Y.2011) (quotations omitted).

Here, Plaintiff alleges that the union breached its duty of fair representation in discriminating on the basis of her gender, in failing to contest her March, 2010 layoff from the Second Avenue subway jobsite, and in preventing her from resuming work in a crane on which she had a prior claim.  She also alleges union members created the circumstances for her layoff with bad faith and discriminatory intent. Plaintiff cites longstanding practice that is unwritten to support her beliefs and notes that Defendant Hassler's son never received the appropriate swing shift pay for his work on night shifts.

As noted supra, the EPA investigated Plaintiff's claims and issued a written finding that there had been no violation of the union's bylaws. With respect to the crane Plaintiff operated during the day shift, when the swing shift commenced and Plaintiff's day shift was eliminated shortly thereafter, the union interpreted its own seniority rules to apply based on shift, i.e., Plaintiff had first claim on the crane during the day shift and Defendant Hassler's son had a claim in the machine for the swing shift.  No written policies prohibited that interpretation.  It appears to this Court that the union's interpretation, even if wrong, is reasonable.  The union's

explanation does not fall so far outside a wide range of reasonableness as to be irrational or arbitrary. The union did not breach its duty of fair representation.

### b. Violations of the Collective Bargaining Agreement

Plaintiff appears to ground her claims of employer violations of the collective bargaining agreement in her wrongful termination and gender discrimination claims. Plaintiff attributes the commencement of a swing shift – and elimination of her own position as she worked the day shift on the same machine – to orchestrated action between the union and the employer Defendants. Nevertheless, as noted above, in a hybrid claim, the claims against the union and employer are 'inextricably linked' and Plaintiff's claim that her employer violated the collective bargaining agreement cannot survive in the absence of the now-defunct claim for breach of the duty of fair representation. See e.g., Commodari v. Long Island University, 89 F.Supp.2d 353 (E.D.N.Y. 2000) (dismissal of collective bargaining claim is dispositive of fair representation clam in hybrid case).

Even if the claim could survive alone, no written policy prohibits the manner in which Plaintiff was laid off and, in any event, it appears that Defendant Hassler, not the employer, made the determination of who would be laid off when the swing shift was the sole remaining shift. No evidence that any of the employer Defendants sought or facilitated Plaintiff's termination from the Second Avenue subway jobsite (or the particular job from which she was terminated) emerged in discovery or, frankly, from Plaintiff herself. To the contrary, Plaintiff noted repeatedly how

employer Defendants commended and appreciated her work due to her attention to safety considerations and acknowledges being hired back on the Second Avenue subway jobsite even after the incidents discussed in the instant case.

## CONCLUSION

Defendants' motion for summary judgment is granted. The cross-claims are dismissed as moot. The Court has reviewed the remaining arguments and claims, along with the authority relied upon by the parties, and finds them unpersuasive. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: July 16, 2014                              /s/
       Brooklyn, New York            Sterling Johnson, Jr., U.S.D.J.